UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


WILLIAM AND SHIRLEY PRUITT,        )
d/b/a TOW RIGHT WRECKER SERVICE,   )
    Plaintiffs,                     )
                                   )
v.                                 )        No.  3:08-CV-471
                                   )        (Phillips)
CITY OF CLINTON, et al,            )
    Defendants.                     )


## MEMORANDUM AND ORDER


Plaintiffs are wrecker service operators, who have brought this § 1983 action against the City of Clinton, the city police chief and the city manager, asserting federal and state claims based on alleged deprivations of plaintiffs' substantive and procedural due process rights arising out of the City's administration of its towing service call list.  The defendants have moved for summary judgment on all of plaintiff's claims.  Plaintiffs have responded in opposition.  For the reasons which follow, defendant's motion for summary judgment will be granted as to plaintiffs' claims arising out of events occurring in March 2007, and the motion will be denied as to the remainder of plaintiffs' claims.


## I.  Background


Plaintiffs William and Shirley Pruitt, d/b/a Tow Right Wrecker Service, currently participate in the City of Clinton's rotation list of wrecker companies that are called for towing services.  Tow Right began participating in the rotation list in 2001.  Tow Right

is the only participating wrecker company that is operated by black owners. The City maintains the "City of Clinton, Tennessee Wrecker Policy and Procedures," a manual with which all participating wrecker companies must comply.

Steve Jones is the City Manager for Clinton and administrator of the Manual. The Manual, with regard to the discretion of the City Manager, provides that:

- The City Manager shall approve permits, revoke or suspend permits, and otherwise administer the provisions of this Chapter.

- The action of the City Manager in granting or refusing a permit or in revoking or suspending a license shall be final except as it may be subject to review by law.

- The City Manager or his agent may inspect licensee's equipment or facilities at any time during business hours . . . . The City Manager shall direct or make further investigations as he deems proper and grant or refuse a permit in his discretion.

The Manual further provides:

**Permit revocation/suspension**

(1) The City Manager shall revoke or suspend the permit of any permitee on any of the following grounds:

. . .

(b) Failure of a City approved wrecker permitee to have an operable and properly equipped wrecker and qualified operator on duty at all times or to promptly respond to police calls.

. . .

(d) A violation of any provision of this chapter.

(e)     The City Manager may revoke or suspend a permit for due cause not specified herein.

(2)     Revocation of a permit shall terminate all authority and permission granted by such permit to the licensee. Any person whose permit has been revoked shall not be eligible to again apply for a license for a period of one (1) year from the date of such revocation. Suspension of a permit shall be decided on a case-by-case basis. An appeal of a revocation or suspension may be made to the City Manager.

Police Chief, Richard Scarbrough, supervises the rotation list and compliance with the Manual. Chief Scarbrough recommends to the City Manager whether a wrecker company should be removed from the rotation list, but the ultimate decision lies with the City Manager. The City Manager relies upon Chief Scarbrough for implementing the Manual and rotation list, but he personally reviews and signs off on the Manual and Chief Scarbrough keeps him informed of wrecker service compliance. The Manual provides progressive levels of discipline with regard to probation, suspension, and revocation of participation in the rotation list. When deciding how long to place somebody on probation, Chief Scarbrough testified:

> We take the levity or the severity of what they had done, the action and determine what the probation, and/or you would probably – if it were severe enough of an infraction, you would probably terminate the agreement between the City and the tow truck operator.

When discussing how a wrecker company would be placed back on the list after being suspended, Chief Scarbrough stated that when the suspension is due to a situation in which the wrecker company does not have the proper equipment, the wrecker company would be placed back on the list immediately upon getting the proper equipment. Lt. David

Queener, working under Chief Scarbrough, conducts the inspections of tow trucks and lots for determining compliance with the Manual.

The Manual underwent a revision, with a new Manual becoming effective February 29, 2008. The new Manual required the wrecker companies to install the eight (8) foot, blind fence, as opposed to the "fence" or "natural barrier" allowed by the old Manual. The Police Department was concerned that all wrecker companies have fencing appropriate to prevent vandalism and theft.

Wrecker operators were required to maintain two properly equipped wreckers under the old Manual, which did not change with the implementation of the new Manual. In 2007, Tow Right presented only one wrecker for inspection, but it was not suspended from the rotation list. When questioned about the 2007 inspection, Lt. Queener testified, "I would say on the [2007 inspection] the reason he didn't get suspended was because I went back and said Bill's second wrecker is down, he's going to fix it."

In 2007, the City of Clinton was dealing with a lot of "volatility" and "animosity" between wrecker companies. In March 2007, Chief Scarbrough held a meeting with all participating wrecker companies at which concerns regarding the Manual then in effect were discussed. William Pruitt attended that meeting along with all of the other owners/representatives of participating wrecker companies. At this meeting, Chief Scarbrough discussed the change in the Manual requiring the fence surrounding the lot to

be blinded and told the wrecker companies that they would be given a reasonable amount of time to comply with that requirement.

In March of 2007, Tow Right was dispatched by the City for a motor vehicle accident involving a tractor trailer and a pickup truck. William Pruitt arrived at the scene with his wrecker, which was not big enough to accommodate the tractor trailer, but could accommodate the pickup truck. Pruitt did not learn of the need for the larger wrecker until he arrived at the scene. At the time, he consulted with the officer on the scene and determined that he should contact Quality Towing, another participating wrecking company, to assist with the tractor trailer.

The Manual in effect at the time provided the following:

(10)    No [participant] shall refer or delegate police calls to other wrecker companies.

. . .

(15)    if additional equipment or recovery vehicles are needed to adequately complete a tow (i.e., tractor trailer roll-over or difficult auto recovery), discretion of the responding wrecker service should be used in deciding what and whose additional equipment will be required. The severity of the situation and the estimated response time of additional equipment will be weighed by the officer at the scene, who is the deciding authority.

. . .

**Wrecker Rotation:** Each wrecker service will be treated fairly by the City of Clinton. Be it understood that in the event a particular scene or circumstance calls for additional wreckers, which the initial supplier cannot readily provide, the next scheduled wrecker will be called.

> If in the event, a larger class wrecker is needed and the supplier cannot provide for such services, the next scheduled wrecker service, which has a class wrecker large enough to supply the demand will be called.

On March 2, 2007, the next wrecker service on the rotation list was Lowe's wrecker service, not Quality. Tow Right and Quality were placed on probation for the incident. Tow Right continued to receive dispatches from the City while on probation.

At the end of February 2008, Chief Scarbrough again held a meeting with all participating wrecker companies. William Pruitt attended the February 2008 meeting. Pruitt stated that, despite other wrecker companies complaining at the meeting, he was happy at that time with being on the rotation list. Chief Scarbrough took notes of the concerns that all participating wrecker companies had regarding the Manual and reviewed the State of Tennessee towing policy and, as a result, created the new Manual that was adopted in 2008. On February 29, 2008, William Pruitt signed a copy of the new Manual that included the new fencing requirements. All owners/representatives of participating wrecker companies, including Pruitt, signed on February 29, 2008 that they had received a copy of the new Manual.

The 2008 Manual stated:

The following STEPS OF ACTION will be placed against wrecker owners IF:

(A)     Any provisions of the City of Clinton Wrecker Policy and Procedure Manual are violated or ignored;

(B)     Any violation of law as set forth by federal, state, or municipality is violated.

If a towing company violated one of the above provisions, the City imposed a series of progressive disciplinary steps:

FIRST STEP: WRECKER OWNER WILL BE PLACED ON PROBATION AND IT WILL SO BE INDICATED BY A WRITTEN NOTICE BEING PLACED IN A FILE AT THE CLINTON POLICE DEPARTMENT.

SECOND STEP: WRECKER OWNER WILL BE SUSPENDED FROM OUR "ON-CALL LIST" FOR A PERIOD OF SEVEN (7) DAYS.

THIRD STEP: WRECKER OWNER WILL BE REMOVED FROM OUR "ON-CALL LIST" FOR A PERIOD OF THREE (3) MONTHS.

FOURTH STEP: WRECKER OWNER WILL BE REMOVED FROM OUR "ON-CALL LIST" AND CANNOT RE-APPLY FOR APPLICATION FOR A PERIOD OF ONE (1) YEAR.

On March 16, 2008, a Sunday, the Pruitts were informed by an acquaintance at the grocery store, who was not a City employee, but had allegedly heard the information over the police scanner, that Tow Right was being taken off of the City's rotation list. That same day, Shirley Pruitt contacted dispatch regarding the rotation list. Tow Right's turn on the rotation list did not begin until midnight March 17, 2008. Tow Right did, in fact, begin its turn on the rotation list on March 17, 2008. Tow Right received calls from the City beginning March 17, 2008, and throughout its week of rotation. The City tow-in-log reflects that Tow Right was dispatched on the one and only towing call received on March 17, 2008.

Chief Scarbrough testified that Tow Right was not on suspension on March 16, 2008. Chief Scarbrough testified that an officer had thought Tow Right was on suspension and that, as soon as Chief Scarbrough was made aware of the misunderstanding, he immediately informed the officer that Tow Right was not on suspension.

On March 17, 2008, the Pruitts attended a City Council meeting. The Pruitts commented that they believed that Chief Scarbrough had removed them from the rotation list without the notice required by the Manual, and that they were treated unfairly when compared to the treatment given to other towing companies. Several days after the March 17, 2008 City Council meeting, the Pruitts filed a written complaint and then met with City Manager Jones, and complained about discriminatory and unfair treatment at the hands of Chief Scarbrough and Lt. Queener. Jones testified that he informed the Pruitts that he wanted everyone in the City to be treated fairly and that if he did not feel they were being treated fairly then he would take the appropriate action. Jones addressed the Pruitts' complaint with Chief Scarbrough. Jones reiterated to Chief Scarbrough his concerns to make sure that everybody was in compliance and to be sure that everyone was treated fairly.

On March 27, 2008, Chief Scarbrough and Lt Queener conducted inspections of the wreckers of all participating wrecker companies. Tow Right presented only one wrecker for inspection. Shirley Pruitt testified that Tow Right did not have in operation a second wrecker at that time, and that from 2001 up until 2008, they only operated one

truck.  She further testified that despite producing only one wrecker for inspection in 2007, Tow Right was not suspended.  Shell's towing, another participating wrecker company, did not present any wreckers for inspection.

On April 2, 2008, the City conducted lot inspections.  Tow Rights' lot was determined to not have fencing as required by the Manual.  Boyd's Wrecker Service, another participating wrecker company, had a gate in disrepair.  Following the wrecker and lot inspections, Chief Scarbrough recommended to City Manager Jones the suspension of three participating wrecker companies: (1) Shell's towing for failure to present the requisite number of wreckers; (2) Tow Right to failure to present the requisite number of  wreckers and for failure to have a fenced lot; and (3) Byrd's Wrecker Service for failure to maintain an adequately fenced lot.

Shell's towing informed City Manager Jones, subsequent to the wrecker inspections, that they were no longer in the wrecker business; therefore, they were removed from the rotation list for that reason.  Boyd's Wrecker Service had fixed the gate on their lot; therefore, they were not suspended.  Tow Right was suspended for lack of compliance with the Manual in two different areas: (1) not maintaining a minimum of two properly equipped and licensed wreckers; and (2) failure to maintain the proper fencing on the lot.  The City informed the Pruitts of the suspension when an officer personally handed the Pruitts the suspension letter.

In June 2009, Tow Right presented two wreckers for inspection. From February 2008 until June of 2009, Tow Right operated out of the Pruitts' home, but in June of 2009, Tow Right began renting a lot and had completed the requisite fencing around it. Tow Right was placed back on the rotation list when the new fence was completed. William Pruitt testified that he believed he was suspended from the rotation list in 2008 because of his skin color. The Pruitts contend that the City did not afford them any of the procedures described in the Manual. Tow Right received no probation. Tow Right was not suspended for a week or three months. Instead, Tow Right was suspended on April 8, 2008 and remained on suspension for over a year, until Tow Right reapplied and was readmitted to the rotation list in June 2009. The Pruitts further contend that to this day, none of the wrecker service lots meet the requirements of the Manual, and none have suffered any consequence.

The Pruitts have filed this action under § 1983 for violation of their substantive and procedural due process rights for depriving them of their ability to participate in the City's rotation list. Specifically, the Pruitts assert a denial of their right to equal protection in that the requirements of the Manual were applied differently to them than they were applied to others similarly situated, and they were subjected to intentional and arbitrary discrimination in the application of the provisions of the Manual by a duly constituted agent of the City of Clinton. The Pruitts further assert that the treatment accorded to them constitutes a denial of their procedural due process rights because they have a protected property interest in remaining on the City's rotation list, and they were deprived of that interest without recourse and in violation of the City's published policies and procedures.

10

The Pruitts seek damages for their exclusion from the rotation list, plus attorneys' fees and costs.

The defendants have moved for summary judgment on plaintiffs' claims asserting: (1) plaintiffs' claims regarding events occurring in March 2007 are time barred; (2) defendants were not deliberately indifferent to the constitutional rights of participating wrecker companies; (3) plaintiffs cannot prove that they were denied Equal Protection because they cannot establish that defendants intentionally discriminated against them; (4) plaintiffs cannot prove that they were denied due process because they cannot establish that they had a protectable property interest in remaining on the City's rotation list; and (5) Chief Scarbrough and City Manager Jones are entitled to quality immunity.

## II.  Summary Judgment Standard

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  The burden is on the moving party to conclusively show that no genuine issue of material fact exists.  The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial

simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

### III.  Statute of Limitations under § 1983

Defendants argue that plaintiffs' claims regarding events occurring in March 2007 are time barred. The court agrees. The duration of the statute of limitations for § 1983 actions is governed by state law; however, federal standards govern when the statute begins to run. *Sharpe v. Cureton,* 319 F.3d 259, 266 (6th Cir. 2003). Tennessee law provides for a one-year statute of limitations for § 1983 actions. Tenn. Code Ann. § 28-3-104(a)(3). The Sixth Circuit has held that actions brought under § 1983 for events occurring in the State of Tennessee must be filed within one year from when they accrued. *Eidson v. State of Tenn. Dept. of Children's Servs.,* 510 F.3d 631, 634 (6th Cir. 2007).

Plaintiff's complaint was filed on November 19, 2008. Thus, plaintiffs' claims regarding the City's actions in March 2007 are outside of the applicable statute of limitations and are time barred.

## IV. Existence of a Protectable Property Interest

The court must first determine whether the Pruitts have a protectable property interest in remaining on the rotation list. In *Board of Regents v. Roth*, 408 U.S. 564 (1972), the Supreme Court recognized that "the Fourteenth Amendment's procedural protection of property is a safeguard of the security of interest that a person has already acquired in specific benefits. These interests – property interests – may take many forms. For a property interest to exist, it must be more than an abstract or speculative desire or need and it must be more than a unilateral expectation of it." *Id.* at 577. "A legitimate claim of entitlement" must exist. *Id.*

A case similar to the present case arose in *Gregg v. Lawson*, 732 F.Supp. 849 (E.D.Tenn. 1989). There, Judge Leon Jordan held that the plaintiff had a "legitimate claim of entitlement" in remaining on the wrecker tow list, on grounds that "several references to and procedures for removal or suspension from the list to compel compliance with the regulations reflect the mutual nature of the relationship established by inclusion on the list." *Id.* This kind of property interest was recognized by the Supreme Court in *Perry v. Sindermann*, 408 U.S. 593 (1972). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Id.* at 601.

In the case before the court, Tow Right had been included on the rotation list from 2001 until April 8, 2008. The plaintiffs' services had been utilized and they had

13

received economic benefits as a result. They had complied with all requirements of the Manual, which required the expenditure of substantial funds. Moreover, the Manual creates an expectation that a provider will be called on a regular rotating basis. Clearly, the regulations contained in the Manual are more than a mere internal matter and benefitted as well as governed the conduct of both the City and the wrecker service providers. The City Manager's discretion is limited by the provisions of the Manual, only qualifying wrecker services may remain on the rotation list, and the City Manager may only suspend a wrecker service upon finding that the service has either violated a provision of the Manual, a provision of the law, or for other due cause. The several references to and procedures for removal or suspension from the list to compel compliance with the regulations reflect the mutual nature of the relationship established by inclusion on the rotation list.

The court finds that the plaintiffs have sufficiently alleged "a legitimate claim of entitlement" based on these "rules or mutually explicit understandings." *Perry*, 408 U.S. at 601. Here, the Manual contains printed rules and regulations that govern the parties' conduct and formal application procedures exist for anyone wanting to be placed on the rotation list. Plaintiffs had been on the rotation list for several years and had been utilized by the City for towing services. Under the Manual, plaintiffs had more than a mere unilateral expectation of a benefit and thus acquired a sufficient interest in remaining on the list as to constitute a protectable property interest under law. *See Bishop v. Wood*, 426 U.S. 341 (1976).

## V.  Due Process

Having established that a sufficient property interest has been alleged, the question becomes whether due process was required to remove Tow Right from the rotation list.   Plaintiffs allege that Chief Scarbrough and City Manager Jones deprived plaintiffs of their property interest in participating in the City's rotation list.  The Due Process Clause prevents the government from depriving a citizen of "property" without due process of law.   To prevail on their claim that defendants deprived them of placement on the rotation list without due process, plaintiffs must show:

> (1) that they have a . . . property interest protected by the Due Process Clause of the Fourteenth Amendment;
>
> (2) that they were deprived of this protected interest within the meaning of the Due Process clause; and
>
> (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

*Med Corp. Inc., v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).


Here, Tow Right was suspended because it allegedly violated two provisions of the Manual (1) not having two operable wreckers, and (2) not having an adequately fenced impound lot.   The City's Manual contains a four-step progressive discipline procedure before a wrecker service may be removed from the rotation list.  The City did not provide plaintiffs any of these procedural protections.    Plaintiffs received no probation. They did not get suspended for a week or three months.   Instead, the City went immediately to step four and indefinitely suspended Tow Right on April 8, 2008.  Thus, a material issue of fact exists whether plaintiffs' due process rights were violated by

defendants' actions, and summary judgment is inappropriate on plaintiffs' due process claim.

## VI.   Equal Protection

Plaintiffs also allege that defendants violated the Fourteenth Amendment's equal protection clause when they enforced the requirements of the Manual in a selective and discriminatory manner.   The Equal Protection Clause requires that those similarly situated should be treated alike.   Under the Equal Protection clause, an individual can bring a claim for the selective enforcement of an otherwise valid law or regulation.   There are three types of selective enforcement claims: (1) those brought by members of a protected class alleging the government arbitrarily discriminated against them based on class membership; (2) those brought by individuals who claim they were punished for exercising a constitutionally protected right; and (3) those brought by individuals who are not members of a protected class and are not alleging an infringement of a constitutionally protected right but rather claim to be a "class of one" and allege that the government intentionally treated them "differently from others similarly situated and that there was no rational basis for the difference in treatment."   *Village of Westbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiffs allege that the City (1) punished them for exercising their constitutionally protected right to complain about unfair treatment and (2) treated them differently from other similarly situated wrecker services without any rational basis.

To prevail on their claim of selective enforcement, plaintiffs must show (1) exercise of a protected right, (2) the enforcer's "stake" in the exercise of that right, (3) the

unreasonableness of the enforcer's conduct, and (4) that the enforcement was initiated with the intent to punish plaintiffs for the exercise of the protected right. *Futernick v. Sumpter Twp.,* 78 F.3d 1051, 1056 n. 7 (6th Cir. 1996). As the Sixth Circuit has explained, "selective enforcement intended to discourage or punish the exercise of a constitutional right, especially the right to criticize the government, is a sufficient basis for § 1983 relief." *Id.* at 1057. Plaintiffs claim that the defendants intentionally punished them, by selectively enforcing the Manual's provisions and suspending Tow Right from the City's rotation list because of the exercise of plaintiffs' First Amendment rights, *i.e.,* addressing complaints regarding the City's rotation system to the City Council and to the City Manager.

It is well established that "the right to petition the government for redress of grievances is grounded in the First Amendment." *Gillard v. Norris*, 857 F.2d 1095, 1101 (6th Cir. 1988). Likewise, it is well established that "retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994). To prevail on their First Amendment retaliation claim, plaintiffs must show (1) that they engaged in a constitutionally protected activity, (2) that defendants' adverse action caused plaintiffs to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity, and (3) that the adverse action was motivated at least in part as a response to the exercise of plaintiff's constitutional rights." *Block v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). As to the third element, plaintiffs "must allege a chronology of events from which retaliation may plausibly be inferred." *El-Amin v. Tirey*, 817 F.Supp. 694, 699 (W.D.Tenn. 1993), *aff'd* 35 F.3d 565 (6th Cir. 1994).

17

First, plaintiffs must first show that their complaints to City Council and to the City Manager were protected speech.  To do this, plaintiffs must show that their complaints "touched on matters of public concern."  *See Bailey v. Floyd County Bd. Of Edu.* 106 F.3d 135, 144 (6th Cir. 1997).  Speech touches on a matter of public concern if the speech "can fairly be considered as relating to any matter of political, social, or other concern to the community."  *Connick v. Myers,* 461 138 (1983).  Tow calls are a "classic issue of community concern."  *Lucas v. Monroe County,* 203 F.3d 964, 974 (6th Cir. 2000).

Here, the plaintiffs engaged in several discussions that related to the City's administration of the rotation list.  First, on February 28, 2008, the Pruitts met with Chief Scarbrough to ask why Lt. Queener failed to notify them of a meeting to discuss proposed changes to the Wrecker Service Policy and Procedure Manual brought on by a public controversy over proposed rate and policy changes, and perceptions of favoritism being shown to another wrecker service.  On March 17, 2008, the Pruitts directed questions and comments to City Council pertaining to their belief that they had been unfairly removed from the City's rotation list, when other wrecker services had not been treated in a similar fashion, and that they were not getting required notices, access to the progressive disciplinary process, and opportunities to fix problems.  Sometime between the City Council meeting and March 25, 2008, Shirley Pruitt filed a written complaint with City Manager Jones, describing various instances of unfair treatment.  Shortly thereafter, the Pruitts met with City Manager Jones to show him pictures of other wrecker lots, intended to prove that their claims of unfair treatment had merit.  Approximately three days after the meeting with City Manager Jones, Chief Scarbrough and Lt. Queener held an unscheduled vehicle

18

inspection at the Civic Center. Following the inspection, Tow Right was suspended on April 8, 2008, and remained on suspension for over a year. Plaintiffs state that suspension from the City's rotation list deprived them of approximately half of their total monthly income. In addition, the Pruitts were required to maintain an eight foot, blinded fence that complied with the City's Manual. Plaintiffs have submitted pictures showing that no other wrecker service on the rotation list maintains the required fence, and plaintiffs state that no other wrecker service has been subjected to any discipline for noncompliance.

Based on the evidence presented, the court finds that there are material issues of fact to be resolved at trial concerning whether the defendants removed Tow Right from the rotation list in retaliation for plaintiffs' constitutionally protected public criticism of the City's administration of the rotation list. Accordingly, the court finds that summary judgment is not appropriate, and defendants' motion will be **DENIED.**

### VII.  Qualified Immunity

Defendants Chief Scarbrough and City Manager Jones have moved for dismissal of plaintiffs' claims against them in their individual capacity on the basis of qualified immunity.

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Courts generally employ a three-step test in reviewing claims for qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred.  Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2005).  Consequently, if the officials acted in an objectively reasonable manner, as assessed in the light of clearly established law at the time of the conduct at issue, they will be insulated by qualified immunity.  *Harlow*, 457 U.S. at 818.  Thus, even if an official has deprived a plaintiff of a federal right, qualified immunity will apply if an objectively reasonable official would not have understood, by referencing clearly established law, that his conduct was unlawful.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998); *Rich v. City of Mayfield Hts.,* 955 F.2d 1092, 1095 (6th Cir. 1992).  Whether an asserted federal right was clearly established at a particular time presents an issue of law.  *Elder v. Holloway*, 510 U.S. 510, 516 (1994).  In inquiring whether a constitutional right is clearly established, a trial court must look first to decisions of the Supreme Court, and then to decisions of the Sixth Circuit and other courts within the circuit, and finally to decisions of other circuits.  *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993).

The "ultimate burden of proof is on the plaintiffs to show that the defendants are not entitled to qualified immunity."  *Rich,* 955 F.2d at 1095.  Claims of qualified

immunity are assessed on a fact-specific basis to ascertain whether the particular conduct of the defendant officials infringed on the clearly established federal right of the plaintiffs, and whether an objective, reasonable official would have believed that his conduct was lawful under extant federal law. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Officials are entitled to qualified immunity "when their decision was reasonable, even if mistaken." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995). Further, "if officials of reasonable competence could disagree on this issue, immunity should be recognized." *Id.*

Here, the court finds that the defendants are not entitled to qualified immunity. There are material issues of fact to be resolved at trial whether the defendants violated plaintiffs' constitutional rights. Moreover, the law on First Amendment retaliation and selective enforcement was clearly established at the time of defendants' alleged misconduct, so that defendants knew or should have known that they were violating plaintiffs' rights. Accordingly, defendants' motions to dismiss based on qualified immunity are **DENIED.**

## VIII.  Conclusion

For the reasons stated above, the defendants' motion for summary judgment [Doc. 14] is hereby **GRANTED IN PART AND DENIED IN PART;** the motion is **GRANTED** as to plaintiffs' claims stemming from their being placed on probation in March 2007, the motion is **DENIED** as to the remainder of plaintiffs' claims. Defendant Scarbrough and

defendant Jones' motions for summary judgment based on qualified immunity are also

**DENIED.**

The parties will prepare the case for trial.

**IT IS SO ORDERED.**

**ENTER:**

_____ s/ Thomas W. Phillips _____
United States District Judge